IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON FREEZE DRY, INC., an Oregon
corporation,

                    Plaintiff,

      v.

AMERICOLD LOGISTICS, LLC, a Delaware
limited liability company,

                    Defendant.

CV-05-1119-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Oregon Freeze Dry, Inc. ("OFD"), alleges claims for negligence and breach of

contract against defendant, AmeriCold Logistics, LLC ("AmeriCold"), seeking damages arising

out of the storage of frozen bananas at AmeriCold's cold storage facility.

1 - FINDINGS AND RECOMMENDATION

The parties are citizens of different states and the amount in controversy exceeds $75,000. Therefore, this court has diversity jurisdiction under 28 USC § 1332.

AmeriCold previously filed a Motion for Partial Summary Judgment (docket # 7) and Alternative Motion to Stay (docket # 10) to enforce a mandatory arbitration provision in the warehouse receipts.  Both motions were denied (dockets #37 & # 39).

AmeriCold has now filed a Motion for Partial Summary Judgment (docket # 48), alleging that a provision in the warehouse receipts limits the amount of damages for which AmeriCold can be held liable.  For the reasons that follow, the motion should be GRANTED.

## LEGAL STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The

court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id* at 631.

## UNDISPUTED FACTS

A review of the parties' submissions, including materials submitted by the parties in previous proceedings,[1] reveals the following undisputed facts:[2]

OFD is a leading provider of food products and services involving freeze-dried foods. In the normal course of its business, OFD purchases large quantities of food products, some of which are frozen, and contracts for the storage of frozen food products. As part of its services, OFD processes frozen bananas for freeze-drying for a large cereal company. AmeriCold is a leading provider of cold storage warehouses.

During the summer and fall of 2004, OFD arranged for multiple truckloads of frozen bananas to be delivered by third-party trucking carriers to AmeriCold for cold storage at its Woodburn, Oregon facility. Olson Decl., ¶ 7. For each shipment or truckload of product received, AmeriCold issued a warehouse receipt describing the product and when and where it was received and stored. *Id,* ¶ 9. The parties had no other written agreement relating to the storage of the frozen bananas. *Id,* ¶ 14. Approximately 16 individual warehouse receipts, each with identical standard pre-printed language on the front and back, were completed and issued to OFD during the period in question. *Id, ¶¶* 10, 11.

_____

[1] The parties have incorporated all the materials previously submitted in connection with AmeriCold's Motion for Summary Judgment (docket # 7) and Alternative Motion for Stay (docket # 10).

[2] Both parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit, declaration or page(s) of the deposition transcript. All other citations are to the exhibit number of the parties' submissions.

3 - FINDINGS AND RECOMMENDATION

When arranging the storage, AmeriCold did not specifically discuss with OFD's representative, Daniel R. Herbst ("Herbst), that it would impose any terms and conditions on the transaction.  Herbst Decl., ¶ 4.

The front side of each warehouse receipt contains the following language near the top, in dark blue capital letters on a light blue shaded horizontal column, in a font smaller than the adjacent dark-blue shaded titles for product code, quantity, *etc*., but slightly larger than the adjacent unshaded titles for broker, account number, order number, *etc*.:

> IN APPARENT GOOD ORDER EXCEPT AS NOTED HEREON (CONTENTS, CONDITION, WEIGHT AND QUALITY UNKNOWN) THE FOLLOWING DESCRIBED PROPERTY SUBJECT TO ALL TERMS AND CONDITIONS CONTAINED HEREIN AND ON REVERSE HEREOF, SUCH PROPERTY TO BE DELIVERED UPON WRITTEN ORDER OF STORER; AND UPON PAYMENT OF ALL STORAGE, HANDLING AND OTHER CHARGES.  CONTRACT TERMS AND CONDITIONS PRINTED ON REVERSE SIDE HEREOF.

*Id*, Exhibit A.

The reverse side of each warehouse receipt contains the following title in a grey color, bold, capitalized, and with larger letters at the top:  NON-NEGOTIABLE WAREHOUSE RECEIPT AND INVOICE-CONTRACT TERMS AND CONDITIONS.  Below follow two columns of text in a light grey color and small font, organized into 14 sections.  *Id.*  Each section contains a capitalized, centered, bold light grey heading with the title of the section.  At issue here is Section 9, located towards the top of the right column, which provides in part that, in the event of damage to goods, AmeriCold's liability is limited to the Storer's actual damages incurred up to $.50 per pound of damaged goods, unless the Storer timely requests in writing that AmeriCold's liability be increased.  That limitation of damages provision reads in full as follows, in a much smaller font size than reproduced below:

4 - FINDINGS AND RECOMMENDATION

### SECTION 9 - LIABILITY AND LIMITATION OF DAMAGES

(a)  AmeriCold shall not under any circumstances be liable for any loss, damage or destruction to the Goods caused, in whole or in part, by shrinkage in weights, evaporation, decay, taint, rot or other inherent qualities of the Goods, by war, riot, civil disturbance, strike, or other similar event, or by earthquake, explosion, fire, flood, wind, storm, or other act of God or nature.  AmeriCold shall not be liable for any other loss, damage or destruction of or to the Goods, however caused, unless such loss, damage or destruction arises directly and exclusively from AmeriCold's intentional failure to exercise reasonable care as customary for similarly situated warehousemen involving similar goods.

(b)  AmeriCold and Storer agree that AmeriCold's duty of care referred to in subsection 9(a) above does not extend to providing and maintaining a sprinkler system at any warehouse.

(c)  Unless specifically agreed to in writing, AmeriCold shall not be required to store Goods in a humidity-controlled environment or be responsible for tempering Goods.

(d)  AmeriCold shall not be responsible for demurrage or delays unloading or unloading cars or delays in obtaining cars for outbound shipment unless such demurrage or delay was caused directly and exclusively by AmeriCold's gross negligence.

(e)  **IN THE EVENT OF LOSS, DAMAGE OR DESTRUCTION TO GOODS FOR WHICH AMERICOLD IS EITHER CONTRACTUALLY OR LEGALLY LIABLE (WHETHER IN LAW OR IN EQUITY), STORER DECLARES THAT AMERICOLD'S LIABILITY FOR DAMAGES SHALL BE LIMITED TO ACTUAL DAMAGES INCURRED UP TO $0.50 PER POUND OF LOST, DAMAGED OR DESTROYED GOODS; PROVIDED, HOWEVER, THAT UPON ISSUANCE OF THIS WAREHOUSE RECEIPT OR WITHIN A REASONABLE TIME THEREAFTER (NOT TO EXCEED FIFTEEN (15) DAYS), STORER MAY REQUEST IN WRITING THAT AMERICOLD'S LIABILITY BE INCREASED ON PART OR ALL OF THE GOODS STORED UNDER THIS WAREHOUSE RECEIPT.  SUCH INCREASE TO LIABILITY WILL BECOME EFFECTIVE ONLY UPON WRITTEN CONFIRMATION BEING ISSUED BY AMERICOLD, IN WHICH CASE AN INCREASED CHARGE WILL BE ASSESSED TO STORER, BASED UPON THE INCREASED VALUATION; PROVIDED, HOWEVER, THAT, ANY SUCH INCREASE TO AMERICOLD'S LIABILITY PURSUANT TO THIS SUBSECTION 9(e) WILL NOT BE EFFECTIVE IF AMERICOLD'S WRITTEN CONFIRMATION IS ISSUED AFTER AMERICOLD IS NOTIFIED OF OR OTHERWISE LEARNS THAT LOSS OR DAMAGE HAS OCCURRED TO THE GOODS WHICH**

**ARE THE SUBJECT OF THE INCREASED LIABILITY.  TO THE EXTENT ALLOWABLE BY LAW, WITH RESPECT TO ALL CLAIMS INVOLVING THE GOODS OR STORER, AMERICOLD SHALL IN NO EVENT BE LIABLE FOR INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL OR CONSEQUENTIAL DAMAGES, UNDER ANY CIRCUMSTANCES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, REVENUE OR SAVINGS.**

     **(f)  THE LIMITATION OF LIABILITY REFERRED TO IN SUBSECTION 9(e) ABOVE (THE "LIMITATION OF DAMAGES") SHALL APPLY TO ALL CLAIMS, INCLUDING, WITHOUT LIMITATION, INVENTORY SHORTAGE AND MYSTERIOUS DISAPPEARANCE CLAIMS UNLESS STORER PROVES BY AFFIRMATIVE EVIDENCE THAT AMERICOLD CONVERTED THE GOODS TO ITS OWN USE.  STORER WAIVES ANY RIGHTS TO RELY UPON ANY PRESUMPTION OF CONVERSION IMPOSED BY LAW.**

     (g)  Storer shall hold AmeriCold harmless from and indemnify it against all claims, regardless of how or by whom such a claim is raised, asserting liability for loss, damage, or destruction of Goods in an amount above the Limitation of Damages.  All costs, including attorneys' fees, incurred by AmeriCold relating in any way to any such claim shall be charged to Storer, shall become part of Charges, and shall be secured by the lien created by this Warehouse Receipt on all of Storer's Goods, whether or not covered by this Warehouse Receipt.

*Id* (emphasis in original).

Subsections (e) and (f) have the same font size as the heading of the section, while the remaining subsections are written in smaller font.

Each time AmeriCold issued a warehouse receipt, it faxed only the front page to the fax number supplied by OFD.  Herbst Decl., ¶ 5; Olson Reply Decl., ¶¶ 3-4.  The fax did not include the terms and conditions on the reverse side of the receipt.  Herbst Decl., ¶ 5.  Herbst was not aware of and did not agree to any terms and conditions on the reverse side of the warehouse receipt.  *Id,* ¶¶ 5-7.  AmeriCold denies it has any knowledge of who Herbst is or in what capacity he served OFD.  Olson Reply Decl., ¶ 5; McFerron Reply Decl., ¶ 5.

6 - FINDINGS AND RECOMMENDATION

AmeriCold also mailed the corresponding original warehouse receipts to the address provided by OFD. Olson Reply Decl., ¶ 6. Apparently the address belonged to OFD's Accounting Department, which was not involved in the business relationship with AmeriCold and which did not have the authority to agree to any terms and conditions on the receipt. Bibeau Decl., ¶ 10. The address supplied by OFD did not direct the mailings to the attention of any specific individual, department, or mail stop code. Olson Repl Decl., ¶ 7. Moreover, AmeriCold had no control or knowledge of where the mail received by OFD at that address was routed once it was received. *Id,* ¶ 8. It is unknown how soon OFD mailed the original receipts after it accepted storage of the frozen bananas.

## DISCUSSION

### I.    Enforceability of the Limitation Provision Under Oregon Law

AmeriCold moves for partial summary judgment that if AmeriCold is found liable for OFD's damages, then the amount of its liability should be limited as provided by Section 9 of the warehouse receipts. OFD opposes the motion, arguing that the limitation of damages provision is not enforceable.

#### A.    Applicable Law

ORS Chapter 77 regulates warehouses, warehousemen and warehouse receipts. Warehouse receipts are not always required to be issued. When issued, warehouse receipts must contain certain information in order to limit liability, such as the location, date, rate of storage and handling charges, and description of the goods. ORS 77.2020(2). In addition to these *mandatory* terms, warehouse receipts may include any other *optional* terms "which are not contrary to the provisions of the Uniform Commercial Code ["UCC"] and do not impair the

obligation of delivery as set forth in ORS 77.4030 or the duty of care as set forth in ORS

77.2040," and "[a]ny contrary provision shall be ineffective."  ORS 77.2020(3).  Among these

optional terms are those *expressly authorized by statute*, including:

> (2) Damages may be limited by a term in the warehouse receipt or storage
> agreement limiting the amount of liability in case of loss or damage, and
> setting forth a specific liability per article or item, or value per unit of
> weight, beyond which the warehouseman shall not be liable; provided,
> however, that such liability may on written request of the bailor at the time
> of signing such storage agreement or within a reasonable time after receipt
> of the warehouse receipt be increased on part or all of the goods
> thereunder, in which event increased rates may be charged based on such
> increased valuation . . .
> (3) Reasonable provisions as to the time and manner of presenting claims and
> instituting actions based on the bailment may be included in the warehouse
> receipt or tariff.

ORS 77.2040(2) & (3).

ORS 77.2040 did not "repeal or change any existing law or rule of law which imposes a

higher responsibility upon the warehouseman or invalidates contractual limitations which would

be permissible under this chapter."  ORS 77.2040(4).  ORS 77.2040(4) *almost* mirrors its UCC

counterpart, the Unrevised UCC § 7-204(d).  The difference between the two becomes relevant

in the present case because the parties dispute the applicability of *Voyt v. Bekins Moving &*

*Storage Co.*, 169 Or 30, 119 P2d 586 (1941) ("*Voyt I*"), *adhered to on reh'g*, 169 Or 30, 127 P2d

360 (1942) (*"Voyt II"*), after the enactment of ORS 77.2040.  Under the legislative note

accompanying the Unrevised UCC § 7-204, state legislatures are advised to "[i]nsert in

subsection (d) a reference to any *statute* which imposes a higher responsibility upon the

warehouse or invalidates a contractual provision . . . ."  However, the Oregon Legislature

departed from the UCC model by inserting the broader "any existing law or rule of law"

language in ORS 77.2040(4), rather than the narrower "statute" language used by the Unrevised

8 - FINDINGS AND RECOMMENDATION

UCC § 7-204(d).  Because of that broader language, this court concludes that ORS 77.2040(4)

preserves the validity of both the existing statutes *and* the common law, including *Voyt I* and

*Voyt II.*

> **B.**    **Analysis**

>> **1.**    **Public Policy Concerns**

OFD argues that based on public policy concerns, Oregon law precludes AmeriCold from

limiting its liability.  Specifically, OFD contends that liability limitations for the bailee's

negligence are only valid when the parties stipulate to a "fairly arrived at" value of the goods

stored.  *Voyt I*, 169 Or at 65, 119 P2d at 600.  "If . . . the stipulation as to the value is fairly and

honestly made as a basis of the carrier's charges and responsibility, it will be sanctioned as a

proper and lawful contract."  *Id*, 169 Or at 47, 119 P2d at 593, citing *Normile v. Oregon*

*Navigation Co.*, 41 Or 177, 69 P 928, 929 (1902) (a case dealing with common carriers).  Under

this standard, OFD asserts that the limitation of AmeriCold's liability to $0.50 per pound of

bananas is unenforceable because AmeriCold unilaterally issued the warehouse receipts after the

bailment relationship commenced and without any reference to the actual value of the product.

Although *Voyt I* invalidated the limitation of damages provision, it did so "based on the

specific facts of the case at bar."  *Id*, 169 Or at 61, 119 P2d at 598.  In that case, the

warehouseman was notified that the steamer trunk contained sterling silver and that the bailor

wanted the trunk placed in a vault.  However, the warehouse receipt limited the warehouseman's

liability to $10 per hundredweight and was not sent to the bailor until about two weeks after the

warehouseman had accepted the goods.  The bailor was not a merchant and was never requested

to, and did not, sign the warehouse receipt.  After the sterling silver was stolen, the

warehouseman sought to enforce the limitation of damages provision, which would limit its liability to only $25. Declaring the limitation of damages clause invalid, *Voyt I* did not attempt to define the circumstances of a value fairly and honestly arrived at. Instead, it held that where a business party knew it was receiving a trunk of silver from a consumer "worth thousands of dollars" and yet valued it at $25, the alleged agreement was "so disproportionate that it would amount in fact to a contract impairing the obligation of the warehouseman to exercise due care" unless "the warehouseman, knowing the substantial value, brings home to the bailor not only the rate to be charged but also that it was a reduced rate to be applied as part of a bargain in which plaintiff was to agree to this extraordinary low valuation." *Id*, 169 Or at 63, 119 P2d at 599.

The record here reveals no such huge discrepancy between the valuation in the limitation of liability provision ($0.50 per pound) and the actual value of the product.[3] As clarified by *Voyt II*, whether the valuation here was fairly arrived at depends on whether OFD assented to it. "[I]t is the matter of the making of such agreements, the fairness of notice and the reality of assent and consideration rather than the fairness of the bargain if made which requires scrutiny." *Voyt II*, 169 Or at 86, 127 P2d at 361.

### 2. **Time of Agreement**

OFD also contends that under *Voyt I*, 169 Or at 62, 119 P2d at 598-99, limitations of the amount of liability are not valid unless they are inserted *prior to* or *at the time* of the bailment. Here, the goods were delivered by a third-party carrier, and neither party has offered evidence regarding *when* the warehouse receipts were mailed to OFD. It is possible that they were mailed as soon as the goods were received, *i.e.* at the time of the bailment.

---

[3] According to OFD's counsel during the July 6, 2006 oral argument, OFD had paid $0.80 to $0.85 per pound.

10 - FINDINGS AND RECOMMENDATION

More importantly, *Voyt* involved a provision that limited the amount of liability to a certain value "unless the value [of the goods stored] [was] made known *at the time of storage . . .*" (emphasis added). *Id*, 169 Or at 37, 119 P2d at 589. In contrast, the limitation of damages provision in the AmeriCold warehouse receipts mirrors the language of ORS 77.2040(2), allowing the bailor to reject it at the time of signing *or within a reasonable time after receipt*, rather than at the time of storage. Moreover, ORS Chapter 77 is modeled after the Unrevised UCC, the underlying purpose of which was "(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties . . . ." Unrevised UCC § 1-102(1) (2000).

Even if OFD mailed the warehouse receipts after the time of the bailment, this court declines to conclude, based on *Voyt*, that provisions limiting liability which are inserted in warehouse receipts delivered *after storage* are always unenforceable. Instead, as discussed below, ordinary contract law principles govern the enforceability of such additional terms.

### 3.    Meeting of the Minds

#### a.    Statutorily Authorized Terms

AmeriCold contends that OFD is bound by the limitation of damages provision because it is specifically authorized by ORS 77.2040(2) and OFD failed to reject it within a reasonable time after receiving the warehouse receipts. OFD responds that under *Voyt*, limitation of damages provisions in warehouse receipts are only enforceable if there was a meeting of the minds and denies that it assented to any limitation of AmeriCold's liability.

11 - FINDINGS AND RECOMMENDATION

AmeriCold urges the court to treat statutorily authorized terms in ORS 77.2040 as mandatory terms and consider them part of the contract even if the bailor is unaware of their existence. According to *Voyt*, mandatory terms in a warehouse receipt become part of the contract, whether or not the bailor consents to them. *Voyt II*, 169 Or at 87, 127 P2d at 362. In contrast, optional terms only become part of the contract if there is a meeting of the minds between the parties. *Voyt I*, 169 Or at 59, 119 P2d at 598.

When applying *Voyt*, this court is mindful that it was decided under Oregon's version of the Uniform Warehouse Receipts Act, 4 OCLA §§ 60-202 and 203, which mandated that certain terms be included in a warehouse receipt and permitted additional terms and conditions "provided that they are not contrary to the provisions of the act and . . . do not impair the obligation of reasonable care." Subsequently, the Oregon legislature enacted the UCC, including the provisions on warehouse receipts contained in ORS Chapter 77. Language similar to 4 OCLA §§ 60-202 and 203 resurfaced as ORS 77.2020(2) and (3), respectively. In addition, a new provision, ORS 77.2040(2), was enacted which expressly permits clauses limiting the amount of damages under certain circumstances.

Although a limitation of damages provision was not expressly authorized by statute at the time of *Voyt*, it is not a required term that must be included in every warehouse receipt, but is only one of several authorized terms. As such, it is not a mandatory term, but is an optional term. Because it is authorized by statute, it is not surprising to find it included in every warehouse receipt. But, as long as *Voyt* is still good law in Oregon, a limitation of damages provision cannot be treated any differently than other optional term. In other words, statutorily

12 - FINDINGS AND RECOMMENDATION

authorized terms, including limitation of damages provisions, are a subcategory of optional terms which cannot become part of the contract without a meeting of the minds.[4]

### b.    <u>Legal Standard</u>

Between merchants, additional terms in the acceptance or confirmation of a contract become part of the contract unless "the offer expressly limits acceptance to the terms of the offer," the additional terms "materially alter" the offer, or the party receiving the additional terms objects to them "within a reasonable time."  ORS 72.2070(2).

Clearly, a provision limiting the amount of the bailee's liability would materially alter the offer, requiring acceptance by the bailor.  "Mutual assent, or what historically was considered as the 'meeting of the minds' requirement, may be expressed in words or inferred from the actions of the parties."  *Vtech Commc'n, Inc. v. Robert Half, Inc.,* 190 Or App 81, 86, 77 P3d 1154, 1157 (Or App 2003), *rev. dismissed*, 337 Or 547, 100 P3d 217 (2004) (citation omitted).  The court in *Voyt* recognized that in certain situations, a meeting of the minds is reached if assent can be reasonably implied from the bailor's conduct:

> [A]cceptance and retention without objection of a receipt may bind the bailor to its provisions if the requisites for the formation of a contract are satisfied under the rules herein set forth.  But we think that acceptance and retention without objection can result in a binding contract only if such conduct by the bailor can under the circumstances be fairly said to manifest assent to the new proposed contract.

*Voyt II*, 169 Or at 89, 127 P2d at 362.

In the case of merchants, assent can be implied when a provision is conspicuous and the merchant fails to reject it within a reasonable time.  *See Atlas Mutual Ins. v. Moore Dry Kiln*, 38

---

[4] As this court suggested in its previous F&R, a bailor should expect statutorily authorized terms to be included in a warehouse receipt.  However, at issue there was the enforceability of an optional term (arbitration) under ORS 77.2020(3), rather than a statutorily authorized term under ORS 77.2040.  Therefore, the relationship between ORS 77.2040 and *Voyt* was not explored at that time.

13 - FINDINGS AND RECOMMENDATION

Or App 111, 114, 589 P2d 1134, 1136 (1979) (citation omitted) (between business enterprises, a provision is enforceable if it was either bargained for, was brought to a party's attention or is conspicuous). Otherwise, the merchant "has no reasonable expectation that [the other merchant] understood that his remedies were being restricted . . . ." *K-Lines v. Roberts Motor Co.*, 273 Or 242, 254, 541 P2d 1378, 1384 (1975) (citation omitted). *See also Int'l Nickel, Inc. v. Rudie Wilhelm Warehouse Co.*, 1999 WL 375614, *2 (D Or 1999) (in the absence of bargaining of the parties, a preprinted clause is enforceable in a commercial transaction as long as it is conspicuous).

### c.    Conspicuousness

Since the limitation of liability provision was neither bargained for nor expressly pointed out, it is enforceable only if it was conspicuous. The conspicuousness of a term in a warehouse receipt is a decision for the court. ORS 71.2010(10). A term is conspicuous if "[i]t is so written that a reasonable person against whom it is to operate ought to have noticed it." *Id*. The Oregon Legislature has determined that certain provisions are conspicuous as a matter of law: "A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." *Id*.

The parties strongly disagree on whether the limitation provision and the section heading above the limitation provision are conspicuous. The court was provided with an original blank warehouse receipt. On the front side, language in dark blue capital letters in a light blue highlighted box expressly provides that storage is subject to the terms and conditions printed on the reverse side. The parties do not dispute the conspicuousness of this notice. The reverse side

contains light grey text on a white background, organized in 14 sections. Section 9 is the first full section at the top of the right column, with a printed heading in capital letters identifying it as a liability and limitation of damages clause. Subsection (e), which contains the language limiting the amount to $0.50 per pound of frozen bananas, is the first contrasting part of Section 9.

AmeriCold argues that, under ORS 71.2010(10), the limitation provision is conspicuous as a matter of law because it is language in the body of the form that is in larger and contrasting type. OFD responds that the definition of "conspicuous" in ORS 71.2010(10) is not controlling because ORS 77.2040 does not contain the term "conspicuous," and the requirement of conspicuousness arises from case law safeguarding parties from limitations of liability, and not from the UCC. Instead, OFD cites to other definitions of "conspicuous," such as the ones in BLACK'S LAW DICTIONARY, p. 329 (8th Ed 2002) ("clearly visible or obvious") and MERRIAM-WEBSTER COLLEGIATE DICTIONARY, p. 247 (10th Ed 1994) ("obvious to the eye or mind").

Although ORS 77.2040 does not contain a conspicuousness requirement, the "general definitions" section containing the definition for "conspicuous" is relevant in all cases where Oregon's version of the UCC is applicable, including cases dealing with warehouse receipts. Even in cases relied on by OFD, the courts applied the UCC definition. *See Young v. Cont'l Crane & Rigging*, 183 Or App 563, 567-68, 53 P3d 465, 467-68 (2002); *Anderson v. Ashland Rental, Inc.*, 122 Or App 508, 511, 858 P2d 470, 471 (1993); *Allan v. Guaranty RV Ctrs.*, 2006 WL 1050548 (D Or April 15, 2006).[5] Therefore, the statutory definition of "conspicuous" is fully applicable here.

_____

[5] Cited at oral argument on July 6, 2006.

15 - FINDINGS AND RECOMMENDATION

In *Allan*, the court applied the common law to interpret the meaning of "larger or other contrasting type or color" under ORS 71.2010(10).  The court concluded that a warranty disclaimer in "noticeably faint" bold type that failed to "draw the eye" "did not stand out from the other provisions on the back" of a purchase order "in either font size, type, color, or capitalization," and, therefore, held that the disclaimer was not conspicuous as a matter of law. 2006 WL 1050548 at *5.  The issue in both *Allan* and the present case is whether the provision is in "larger or other [sufficiently] contrasting type or color."  Similar to *Allan*, the provision here is in a rather fainted darker color than the majority of the text.  However, unlike *Allan*, the provision here is also in capital letters and a larger font than most other provisions.

In *Young*, 183 Or App at 565, 53 P3d at 466, the Oregon Court of Appeals found that an indemnity provision in a lease agreement was not conspicuous.  In its previous F&R, this court noted similarities between the provision in *Young* and the arbitration provision:  "[H]ere, as in *Young*, the arbitration clause is on the reverse side in very light color, and *does not differ in either font size, type or color from the other provisions*.  All the section headings are the same, and *the text in the body of the section does not stand out in any way*."  F&R at 13 (emphasis added).  Unlike the arbitration provisions in *Young* and in this case, the limitation provision stands out through its slightly darker color, capital letters, and a larger font set to match the title of the section.

In *Anderson*, 122 Or App at 511, 858 P2d at 471, the court found that a front-page disclaimer "was not printed in a 'larger or other contrasting type or color' that would make it conspicuous, where the disclaimer was written in 7-point type, with a caption in bold 8-point blue type, but was overshadowed by adjacent captions printed in 8-point bright red capital

letters, and lost in a page of "typographical nightmare," which included six different font sizes ranging from 6-point to 14-point,[6] and text in "bold, capital letters, red type and reverse lettering." *Id*. A second disclaimer, located on the reverse side, was also inconspicuous where it "was one of eight sections, all printed in the same faint type, with identical headings." *Id*. Unlike *Anderson*, no visual distractions exist in the present case; the limitation of damages provision is not dwarfed by the adjacent presence of much larger font, red, capital and reverse lettering and it is not printed in the same faint type as the other provisions.

After reviewing the cases presented by the parties, this court concludes that the limitation of damages provision is conspicuous as a matter of law under ORS 71.2010(10) because it is in larger and contrasting type. It is printed in slightly darker letters, is capitalized, with increased font set to match the heading of the section. It is one of just three sections (Sections 8, 9, 10) whose importance is emphasized by contrasting letters, drawing the attention of the reader's eye. Moreover, it is preceded by the heading of Section 9, which adequately notifies the reader of its content. The heading is conspicuous as a matter of law because it is in capital letters.

### d.    <u>Imputation of Knowledge</u>

Next, OFD contends that even if the limitation of damages provision is conspicuous, it is unenforceable because it was sent to its Accounting Department which had no authority to consent to it. Viewed in the light most favorable to OFD, AmeriCold faxed only the front side of the warehouse receipt to Herbst, the agent authorized to conduct business with AmeriCold.

---

[6] OFD cannot reasonably claim that text in 7-point font is in a "larger" font when it is on the same page as 6-point, 8-point, 9-point, 10-point, 11-point and 14-point lettering.

Herbst Decl., § 5.[7]  The fax did not include the provision limiting the amount of liability.  *Id*.

Herbst did not notice the reference on the front page to the terms and conditions on the back.  *Id*.

AmeriCold then mailed the original warehouse receipt (front and back) to an address also

provided by OFD which did not direct the mailings to the attention of any specific individual,

department, or mail stop code.  *Id* at  ¶ 6.  Unknown to AmeriCold, the address belonged to

OFD's Accounting Department which did not have the authority to agree to any terms and

conditions on the receipt.  Bibeau Decl., ¶ 10.  AmeriCold had no control or knowledge of where

the mail received by OFD at that address was routed once it was received.  Olson Reply Decl.,

¶ 8.

      OFD argues that AmeriCold could not have reasonably believed that the recipient of the

original warehouse receipts had any authority to bind OFD to their terms and conditions.  Under

the RESTATEMENT (SECOND) OF AGENCY, § 166, "[a] person with notice of a limitation of an

agent's authority cannot subject the principal to liability upon a transaction with the agent if he

should know that the agent is acting improperly."  However, the record fails to support the

implication that AmeriCold somehow knew that the Accounting Department was receiving the

originals and had no authority to agree to the terms.  AmeriCold denies any knowledge that the

recipient of the original warehouse receipts had limited or no authority to accept the terms, and

OFD has offered no evidence to the contrary.

      OFD denies that its Accounting Department employees had actual knowledge of the

limitation of damages provision.  However, no actual knowledge is required because, as

---

[7]  At the July 6, 2006 oral argument, OFD alleged that Herbst expressly requested AmeriCold to fax the warehouse receipts to him.  However, Herbst's declaration is silent on this matter, and OFD has offered no other evidence to support this allegation.

18 - FINDINGS AND RECOMMENDATION

discussed above, it is conspicuous.  As a result, the recipient is deemed to have constructive notice of its terms.

Even if the Accounting Department employees had constructive notice of the conspicuous limitation of damages provision, OFD contends that such knowledge cannot be imputed to the corporation because these low-level employees were not authorized to agree to terms and conditions in a warehouse receipt.  In response, AmeriCold asserts, without offering any evidence, that the Accounting Department employees received the warehouse receipts in the scope of their employment, allowing their constructive knowledge of the limitation provision to be imputed to OFD, regardless of whether they communicated that information to Herbst.

"A corporation generally is charged with knowledge of facts that its agents learn within the scope of their employment." *Fed. Deposit Ins. Corp. v. Smith*, 328 Or 420, 429, 980 P2d 141, 146, *answer to certified question conformed to by* 189 F3d 472 (1999) (citations omitted); *see also Woodtek, Inc. v. Musulin*, 263 Or 644, 650, 503 P2d 677, 680 (1972) ("the corporation is affected or charged with knowledge of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority") (citation omitted).  This is true even if "the officer or agent does not in fact communicate his knowledge to the corporation through its other officers or agents, or its board or directors." *Phillips v. Colfax Co.*, 195 Or 285, 300, 243 P2d 276, 282, *rehearing denied*, 195 Or 285, 245 P2d 898 (1952) (citation omitted).

While Accounting Department employees may receive warehouse receipts within the scope of their employment, they do not have the authority to agree to terms and conditions such

as those within the AmeriCold warehouse receipts.  *See* Bibeau Decl., § 10.  Therefore, their

knowledge about such terms and conditions may not be imputed to OFD.

e.    <u>**Apparent Authority**</u>

Even if the Accounting Department's constructive knowledge cannot be imputed to OFD,

AmeriCold argues that OFD is bound by the limitation damages provision in the warehouse

receipt based on principles of apparent authority and/or ratification.

Apparent authority "can be created only by some conduct of the principal which, when

reasonably interpreted, causes a third party to believe that the principal consents to have the

apparent agent act for him on that matter.  The third party must also rely on that belief."  *Jones v.

Nunley*, 274 Or 591, 595 (1976).  Whether apparent authority exists is "usually a question for the

finder of fact."  *Lockwood v. Wolf Corp.*, 629 F2d 603, 609 (9th Cir 1980).  FRCP 56(e),

however, requires a party opposing a motion for summary judgment to set forth specific facts

showing that there is a genuine issue for trial.  OFD has not offered any facts to controvert the

facts submitted by AmeriCold in support of apparent authority.

AmeriCold sent 16 complete original warehouse receipts, each containing the limitation

provision to an address provided by OFD, without knowing which department or individual

within OFD was the recipient.  Because OFD provided the address and at no time objected to the

terms of any of the 16 receipts, it was reasonable for AmeriCold to believe that the recipient of

those original receipts had authority to act for OFD.

Although Herbst was faxed only the front page of each warehouse receipt, he had

constructive notice of additional terms and conditions on the back, and knew that it was OFD's

practice to request that the warehouse receipts be mailed to the Accounting Department.

20 - FINDINGS AND RECOMMENDATION

Furthermore, he has offered no evidence that he did anything to either follow up with AmeriCold about the receipts or to check the originals once they arrived in the Accounting Department. Instead, he and OFD continued the business relationship with AmeriCold.

In conclusion, based on the undisputed facts, this court concludes that OFD's conduct, as a matter of law, caused AmeriCold to reasonably believe that the recipient of the original warehouse receipts had the authority to act on behalf of OFD. Under the doctrine of apparent authority, the knowledge of the recipient is imputed to OFD. Because the provision limiting the amount of liability was conspicuous, OFD, through its agent, had constructive notice of the provision's content and, by failing to reject it within a reasonable time after receipt, is bound by the terms of the provision.

Because this court concludes that the limitation provision is enforceable under the doctrine of apparent authority, it need not address the issue of ratification.

## II.    **The Scope of the Provision Limiting the Amount of Liability**

Lastly, OFD contends that even if AmeriCold is entitled to summary judgment against a negligence claim, its motion should be denied as premature because: (1) a bailee cannot limit the amount of liability for damage arising from its grossly negligent acts; and (2) OFD is optimistic that after the close of discovery, which is now in the early stages, it will be able to prove that AmeriCold's conduct was grossly negligent or worse.

In Oregon, contractual language can never limit liability for anything beyond mere negligence. *Farina v. Mt Bachelor, Inc.*, 66 F3d 233, 235 (9th Cir 1995). In *Farina*, an exemption of liability clause in a ski pass application attempted to release the ski resort from "claims based upon negligence and for any other theory of recovery." *Id*. Based on "concern for

public policy considerations," the Ninth Circuit found that limitations of liability for gross negligence and willful misconduct are void.  *Id* at 235-36.[8]  Thus, AmeriCold may only limit its liability for the amount of damages with respect to its ordinary negligence.  Should AmeriCold be found liable for gross negligence or willful misconduct, then Section 9(e) in the warehouse receipts cannot limit the amount of damages.

To state a claim for gross negligence, a plaintiff must allege "(1) negligence accompanied by the actor's conscious indifference to the rights of others, or (2) negligence which is increased in magnitude by the actor's reckless disregard of the rights of others."  *Logan v. West Coast Benson Hotel,* 981 F Supp 1301, 1324 (D Or 1997) (citation omitted).  At this point, OFD has not alleged a claim for gross negligence and has not attempted to identify the elements or submit specific evidence to support such a claim.  As a result, it is appropriate to grant AmeriCold's motion for partial summary judgment against the operative pleadings which plead only an ordinary negligence claim.

However, because the parties are still in the early stages of  the discovery process and AmeriCold has not indicated that it would suffer any prejudice, this court granted OFD's oral motion to amend its complaint to include a gross negligence claim.  If OFD adds a claim for gross negligence, then that claim will not be subject to the limitation of damages provision in the warehouse receipts.

///

## **RECOMMENDATION**

---

[8]  The court in *Farina* went one step further, finding that because it is not obvious from the language in the release clause that the parties intended the clause to be severable, the entire clause is unenforceable, including the limitation of liability for ordinary negligence.  *Id* at 236.  No such request has been made by OFD.  Furthermore, this case is factually distinguishable from *Farina*, given that OFD is not a consumer, the provision limits only the amount of the liability, rather than excuse liability altogether, and the warehouse receipt expressly prohibits a limitation of liability for AmeriCold's intentional acts.

For the reasons stated above, AmeriCold's Partial Motion for Summary Judgment (docket # 48) should be GRANTED.

## <u>SCHEDULING ORDER</u>

Objections to this Findings and Recommendation, if any, are due August 11, 2006.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 24th of July, 2006.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

23 - FINDINGS AND RECOMMENDATION